UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| 3100 ARSENAL HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-CV-424 RLW |
| | ) |
| TREMCO INCORPORATED, et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

This removed diversity matter is before the Court on Tremco Incorporated and Weatherproofing Technologies Inc.'s ("Defendants") Motion for Summary Judgment. (ECF No. 43). Plaintiff opposes the Motion (ECF No. 55) and it is fully briefed. For the reasons below, the Court will grant the motion in part.

### LEGAL STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id*. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "The nonmoving party may not rely on allegations or denials" but rather "must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation or conjecture." *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting *Ball v. City of Lincoln, Neb.*, 870 F.3d 722, 727 (8th Cir. 2017)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)).

**FACTS**

In its Response to Defendants' Statement of Uncontroverted Material Facts (ECF No. 56), Plaintiff purports to contest various facts that have already been admitted. On June 1, 2021, Defendants asked this Court to deem admitted several of their requests for admissions because Plaintiff's responses and objections were deficient under Fed. R. Civ. P. 36. (ECF No. 37). The Court granted Defendants' motion and deemed admitted all but one request. (ECF No. 52). The Court will not reconsider its decision and Plaintiff may not now contest the admitted facts.

Plaintiff 3100 Arsenal Holdings is a Missouri limited liability company operating in St. Louis, Missouri. (ECF No. 4, ¶ 1). Plaintiff owns the apartment buildings at 3100 and 3112 Arsenal Street in St. Louis, Missouri. (ECF No. 56-9, ¶ 2; ECF No. 45-2, p. 1). Defendants are Ohio corporations with their principal places of business in Ohio. (ECF 18, ¶¶ 13-16). Defendant Tremco Incorporated ("Tremco") is the parent company of Defendant Weatherproofing Technologies Inc. ("WTI"). (ECF No. 8).

On January 23, 2019, Plaintiff agreed to pay Defendants $8,250.00 for roof repairs at 3100 and 3112 Arsenal Street. (ECF No. 4, ¶¶ 4-5). Plaintiff also purchased the Tremcare Platinum Agreement Plan ("Agreement") for $12,519.00. (ECF No. 4, ¶ 5; ECF No. 56, ¶ 2).[1] Under the Agreement, WTI was to provide various services to Plaintiff's roofing system for five years, including inspections, preventative maintenance, and housekeeping. (ECF No. 45-2).

On November 15, 2019, Plaintiff texted Defendants to report leaks at both properties. (ECF No. 56-4). Defendants' representative acknowledged the reports on the same day. *Id.* Plaintiff asserts, however, that Defendants did not respond in earnest until November 22, 2019, around which time Defendants made a visual inspection of the roofs. (ECF No. 55, p. 3). According to Plaintiff, repairs did not commence until November 26, 2019. *Id.* Plaintiff asserts that the Defendants never completed the repairs at 3100 Arsenal and never undertook any repairs

---

[1] Throughout its filings, Plaintiff attempts to claim that the Tremcare Platinum Agreement Plan is not the sole agreement at issue. For example, in its Response, Plaintiff references a warranty between Defendants and the previous owner of the subject properties (ECF No. 55, p. 2), and a separate agreement for the initial repairs themselves. *Id.* The Petition's language is clear, however, that the suit arises from alleged breaches of the Tremcare Platinum Agreement, which the Petition refers to as the "Plan." (*See* ECF No. 4, ¶¶ 5-13). Plaintiff concedes the point in its Memorandum in Opposition: "In the case before the court, the actions being challenged are specifically Defendants' non-performance under the terms of the Tremcare Platinum Care Plan." (ECF No. 57, p. 6). The Agreement expressly states it is the sole and exclusive agreement between the parties. (ECF No. 45-2, p. 5).

3

whatsoever at 3112 Arsenal. *Id.* Plaintiff contends that it contacted Defendants again in December because the leaks continued and Plaintiff had not received a report as required under the Agreement. *Id.* at 4. In its Petition, Plaintiff describes Defendants' work as "shoddy, inconsistent with acceptable standards, unworkmanlike, and required extensive additional repairs, all proximately caused by Defendants', each of their's, [sic] failure to honor the terms of their agreement pursuant to the warranty and five year service Plan." (ECF No. 4, p. 2). Plaintiff ultimately paid another contractor $60,000 to repair the roof. *Id.* at 3. Plaintiff also spent $35,000 on interior repairs. *Id.* Plaintiff seeks $95,000 in damages along with costs and attorney's fees. *Id.*

## DISCUSSION

### I. Nature of Damages

Defendants first move for summary judgment on the basis that Plaintiff's claimed damages—roof replacement and damage to the interior of its buildings—are expressly excluded under the Agreement. (ECF No. 44, p. 3). Plaintiff does not address this point directly but argues that the corresponding liability limitation is invalid because the agreed-to remedy fails its essential purpose. (ECF No. 57, p. 3). The Court will address those arguments in more detail in Section II. The existence of the Agreement itself is not in dispute.

The Agreement states, in capital letters:

> IN NO EVENT SHALL WTI OR ANY AFFILIATE BE LIABLE, WHETHER IN CONTRACT, STRICT LIABILITY, TORT OR OTHER THEORY OF LIABILITY, FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND IN CONNECTION WITH THE SERVICES, INCLUDING, BUT NOT LIMITED TO, LIABILITY FOR DAMAGE TO THE OWNER'S BUILDING, CONTENTS OF THE BUILDING, LOSS OF PROFITS, LOSS OF RENTS, OR LOSS OF USE OF ANY EQUIPMENT OR PROPERTY. THE TOTAL AGGREGATE LIABILITY OF WTI OR ANY AFFILIATE UNDER OR IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES SHALL NOT IN ANY

4

>EVENT EXCEED THE SERVICE AGREEMENT PRICE. THIS MAXIMUM LIABILITY SHALL BE PRO-RATED ON A STRAIGHT LINE BASIS OVER THE LIFE OF THE SERVICE AGREEMENT, AND SHALL NOT EXCEED SUCH PRO-RATED AMOUNT.

(ECF No. 45-2, p. 4).

Actual damages are compensatory and are measured by the loss or injury sustained as a direct result of a wrongful act. *Curators of Univ. of Missouri v. Suppes*, 583 S.W.3d 49, 61 (Mo. App. W.D. 2019) (citing *Stiffelman v. Abrams*, 655 S.W.2d 522, 531 (Mo. banc 1983)). Consequential damages "are those damages naturally and proximately caused by the commission of the breach and those damages that reasonably could have been contemplated by the defendant at the time of the parties' agreement." *Id.* (quoting *Ullrich v. CADCO, Inc.*, 244 S.W.3d 772, 779 (Mo. App. E.D. 2008)) (internal quotation marks omitted).

Plaintiff alleges it paid a third party $95,000.00 to mend the roofs and repair the interior of the properties. *Id.* at 3. Defendants contend these damages are consequential because they are not the "direct result of the alleged breach." (ECF No. 44, p. 4). But Defendants' argument is conclusory, as it fails to explain how these damages are anything but the direct result of Defendants' failure to repair the roof as required by the Agreement. Defendants' Statement of Uncontroverted Material Facts is silent on the issue. (ECF No. 45). While the consequential-damages exclusion expressly covers "damages to the Owner's building," it only does so only where those damages are "indirect, special, incidental or consequential." (ECF No. 45-2, p. 4). The language does not preclude the possibility that such damage could be the direct result of Defendants' alleged misconduct.

Thus, facts relating to the leaks and repairs themselves may affect the outcome of the case because they will determine whether the alleged damages are direct or consequential. Even though

5

the exclusion itself is enforceable for reasons discussed in Section II, the Court cannot conclude at this stage that the damages at issue are entirely consequential and therefore covered by the exclusion.[2] Put another way, these material facts remain in dispute and necessarily foreclose the possibility of summary judgment on this issue. *See Anderson*, 477 U.S. at 248.

## II.   Liability Limitation

Defendants next argue that even if the damages are direct, Defendants' liability is limited to $12,519.00—the purchase price of the Agreement. *Id.* at 7. Plaintiff counters that: (1) the Agreement's liability limitation is invalid because the remaining remedy fails its essential purpose; and (2) the limitation is void because Defendants breached the implied covenant of good faith and fair dealing. The Court agrees with Defendants.

### A.   *Plaintiff's "essential purpose" analysis does not apply because the Agreement in question relates to services, not the sale of goods.*

The Agreement states: "The total aggregate liability of WTI or any affiliate under or in connection with this agreement or the services shall not ***in any event*** exceed the service agreement price." (ECF No. 45-2, p. 4) (emphasis added). Plaintiff cites three cases to support its argument that this limitation fails its essential purpose. *See Hartzell v. Justus Co.*, 693 F.2d 770 (8th Cir. 1982); *Select Pork, Inc. v. Babcock Swine, Inc.*, 640 F.2d 147 (8th Cir. 1981); *Midland Forge, Inc. v. Letts Indus., Inc.*, 395 F. Supp. 506 (N.D. Iowa 1975). But as Defendants point out in their Reply, these cases relate to contractual disputes under the Uniform Commercial Code, which only applies to the sale of goods. *Missouri Farmers Ass'n v. McBee*, 787 S.W.2d 756, 760 (Mo. Ct.

---

[2] Plaintiff also seeks attorney's fees and costs. (ECF No. 4, p. 2). Missouri courts follow the American Rule, which requires each litigant to bear the expense of their own attorneys' fees. *Midland Prop. Partners, LLC v. Watkins*, 416 S.W.3d 805, 817 (Mo. Ct. App. 2013) (citation omitted). Attorney's fees are typically only recoverable where specifically authorized by statute or provided for by contract. *Id.* (citation omitted). Neither situation exists here. Plaintiff is not entitled to attorney's fees or costs.

App. 1990). There is no genuine dispute that the Agreement in the present case relates to services, not goods. Thus, the Court must look elsewhere for guidance.

In *Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*, Purcell agreed to purchase a used aircraft from Beechcraft. 59 S.W.3d 505, 508 (Mo. banc 2001). Before finalizing the purchase, Purcell requested a pre-purchase inspection of the aircraft. *Id.* The parties entered into an inspection agreement that limited Beechcraft's liability to $1,250.00—the price of the agreement itself. *Id.* at 508. After purchasing the aircraft for $2,080,000 in July 1997, Purcell's mechanics discovered an oil leak. *Id.* Purcell then sued Beechcraft for breach of contract and negligence, claiming $372,458 in damages. *Id.* The district court upheld the liability limitation and the Eighth Circuit affirmed:

> Sophisticated parties have freedom to contract—even to make a bad bargain, or to relinquish fundamental rights. Sophisticated parties may contractually limit future remedies . . . . Clear, unambiguous, unmistakable, and conspicuous limitations of negligence liability do not violate public policy. The contract must effectively notify a party that he or she is releasing the other party from its own negligence.

*Id.* at 508-09 (cleaned up). The court was not persuaded by Beechcraft's argument that the liability limitation was disproportionately small compared to the cost of repairs and was therefore unconscionable. *Id.* at 510.[3]

In *Sports Cap. Holdings (St. Louis), LLC v. Schindler Elevator Corp. & Kone, Inc.*, Plaintiff Sports Capital—operator of the Scottrade Center in St. Louis, Missouri—sued the defendants after one of the arena's escalators experienced a "catastrophic mechanical failure." No.

---

[3] While *Purcell Tire* did not involve a consequential-damages exclusion, its analysis nevertheless supports the Court's conclusion that such an exclusion is enforceable in this case. As with a dollar-amount limitation on liability, the consequential-damages exclusion is a limit on future remedies that is clear, unambiguous, unmistakable, and conspicuous.

7

4:12-CV-1108 SNLJ, 2014 WL 1400159, at *1 (E.D. Mo. Apr. 10, 2014). Prior to the failure, Sports Capital had contracted with Defendant Schindler Elevator Corporation for the maintenance and repair of the escalator. *Id.* The agreement stated, in relevant part:

> [Schindler] will not be liable for damages of any kind, whether in contract or in tort, or otherwise, in excess of the annual price of this Agreement. We will not be liable in any event for special, indirect or consequential damages, which include but are not limited to loss of rents, revenues, profit, good will, or use of Equipment or property, or business interruption.

*Id.*

Schindler argued that the provision limited its liability for damages to the amount of the annual price of the contract and that any other damages were barred. *Id.* Sports Capital argued that the liability limitation was ambiguous, unconscionable, and otherwise unenforceable. *Id.* The court disagreed, relying in large part on the Eighth Circuit's guidance in *Purcell Tire*. *Id.*[4]

Tellingly, Plaintiff does not address *Purcell Tire* or *Sports Capital* in its Memorandum in Opposition. But like those cases, Plaintiff here contractually agreed that Defendants' liability would be limited to the cost of the contract in question. (ECF No. 55, p. 2). Plaintiff does not argue that it is an unsophisticated party or that the liability limitation is ambiguous. Plaintiff had the freedom to contract and to make a bad bargain. *See Purcell*, 59 S.W.3d at 508-09; *Sports Cap. Holdings,* 2014 WL 1400159, at *2. The Agreement conspicuously states that Defendants' "aggregate liability . . . shall not ***in any event*** exceed the service agreement price." (ECF No. 45-2, p. 4) (emphasis added). Unlike the consequential-damages exclusion, this provision applies to all damages. Simply put, Plaintiff's claims are unambiguously covered by this language. Further,

---

[4] Like the Agreement in the present matter, the contract at issue in *Sports Capital* contained both a liability limitation and consequential-damages exclusion. Thus, the principles discussed here also support the Court's conclusion that the consequential-damages exclusion in the present matter is valid and enforceable.

as noted above, there is no genuine dispute that the Agreement is the sole and exclusive agreement between the parties regarding the services. The Court finds that the liability limitation is clear, unambiguous, unmistakable, and conspicuous.

### B. *The liability limitation is not dependent on an alleged breach of the implied covenant of good faith and fair dealing.*

Plaintiff next argues that the liability limitation is void because Defendants breached the implied covenant of good faith and fair dealing. (ECF No. 57, p. 6). Defendants, and this Court, disagree.

"Missouri law implies a covenant of good faith and fair dealing in every contract." *Farmers' Elec. Coop. v. Mo. Dep't of Corr.*, 977 S.W.2d 266, 271 (Mo. banc 1998). "The good faith obligation requires the contracting parties not to prevent or hinder performance of the contract by either party." *Reitz v. Nationstar Mortg., LLC*, 954 F.Supp.2d 870, 891 (E.D. Mo. 2013) (citing *Finova Cap. Corp. v. Ream*, 230 S.W.3d 35, 45 (Mo. Ct. App. 2007)). The good faith requirement also "extends to the manner in which a party employs discretion conferred by a contract." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 914 (8th Cir. 2007) (citing *Missouri Consol. Health Care Plan v. Community Health Plan*, 81 S.W.3d 34, 45 (Mo. Ct. App. 2002)). In addition, "The covenant of good faith and fair dealing encompasses an obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." *City of St. Joseph v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 370 (Mo. App. W.D. 2008) (citation and internal quotation marks omitted).

The implied covenant of good faith and fair dealing is "not a general reasonableness requirement." *Schell v. LifeMark Hosps. of Mo.*, 92 S.W.3d 222, 230 (Mo. Ct. App. 2002). It is also not "an overflowing cornucopia of wished-for legal duties," *Comprehensive Care Corp. v.*

9

*RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996), but rather "only an obligation imposed by law to prevent opportunistic behavior[.]" *Id.* (citation omitted). Although "phrased in moralistic overtones, good faith does not import into contract law the negligence principles of tort law." *Schell*, 92 S.W.3d at 230.

Plaintiff relies on *City of St. Joseph v. Lake Contrary Sewer District* to support its assertion. In that case, St. Joseph agreed to provide sewage treatment services to "subscribing" adjacent municipalities. *Id.* at 365-66. Under the agreement, subscribers were required to "conform to and be governed by City ordinances now in effect or hereafter enacted and any amendments thereto, pertaining to sewers and sewage disposal [and] sewage treatment." *Id.* at 366. After finalizing the agreement, St. Joseph passed an ordinance requiring subscribers to perform comprehensive testing and inspection of their sewer lines. *Id.* When the subscribing municipalities failed to do so, St. Joseph notified them they were in breach and ultimately filed a petition for declaratory judgment and mandatory injunction. *Id.* at 367. The Missouri court of appeals found that St. Joseph's actions violated the implied covenant of good faith and fair dealing:

> The 2005 ordinance attempted to fundamentally alter the nature of the relationship between the parties and in so doing imposed a significant burden on the subscribers. Such a fundamental change is oppressive in light of St. Joseph not assuming a similar obligation to inspect its own sewers and its lack of reasonable explanation for imposing such a burden only on the subscribers.

*Id.* at 372.

The *St. Joseph* case does not hold that a breach of the duty of good faith and fair dealing may serve to void a contractual limitation of liability provision, and thus it does not support Plaintiff's position. Further, it is readily distinguishable from the present case. Here, Plaintiff does not claim the Defendants fundamentally altered the nature of the relationship between the parties

or exploited changing economic conditions to ensure gains above those reasonably expected at the time of contracting.

The Court is not aware of any Missouri case law that supports Plaintiff's position and Plaintiff has cited none. A recent case from this district, however, indicates Plaintiff's argument lacks merit. *Jacobson Warehouse Co., Inc. v. Schnuck Markets, Inc.* was an action for breach of contract and action on account. No. 4:17-CV-764 JAR, 2017 WL 5885669, at *4 (E.D. Mo. Nov. 29, 2017). The defendant, Schnucks, counterclaimed for breach of contract and breach of the covenant of good faith and fair dealing. *Id.* The contract at issue limited the parties' liability to direct damages, providing that "unless otherwise prohibited by law, neither party shall be liable for incidental or consequential damages or indirect, special or punitive damages." *Id.* at 4. The parties disputed the meaning of the provision, but the Court upheld the limitation of liability language and determined that Schnucks could not recover indirect damages on its claims for breach of contract and breach of the covenant of good faith and fair dealing, though it refused to dismiss those claims. *Id.* at 12. The Eighth Circuit affirmed. *Jacobson Warehouse Co. v. Schnuck Markets, Inc.*, 13 F.4th 659, 668 (8th Cir. 2021). Implicit in this Court's holding is the principle that whether an otherwise valid contractual liability limitation is enforceable does not depend on the outcome of a claim for breach of the covenant of good faith and fair dealing. In sum, Plaintiff's argument is unsupported and must fail.

The Court finds the Agreement's liability limitation is valid and enforceable as matter of law. As a result, to the extent Defendants are liable for any direct damages, Plaintiff is entitled to recover no more than the purchase price of the Agreement, $12,519.00.

### III. Expert Testimony

Plaintiff may recover up to $12,519.00 if it can establish the existence of direct damages. Defendants argue that Plaintiff cannot do so without expert testimony. (ECF No. 44, p. 7). Plaintiff counters that it does not need an expert to show that Defendants never fixed the leaks. (ECF No. 57, p. 3).

To recover damages on its contract claim, Plaintiff must establish a causal link between Defendants' alleged breach and Plaintiff's alleged damages. *Luigino's, Inc. v. Peterson*, 317 F.3d 909, 911 (8th Cir. 2003). "A mere possibility of causation is not enough." *Id.* (citation and internal quotation marks omitted).

To support their argument that Plaintiff cannot establish a causal link without an expert, Defendants rely mainly on *Biggerstaff v. Nance*, 769 S.W.2d 470 (Mo. Ct. App. 1989). In *Biggerstaff*, the Biggerstaffs sued their construction contractors for breach of contract and negligence after a concrete retaining wall collapsed at plaintiffs' new property. The Biggerstaffs asserted that the contractors breached their agreement by not building the retaining walls in a workmanlike manner. The trial court ruled in favor of the contractors and the appellate court affirmed:

> Even though the Biggerstaffs alleged breach of contract and negligence on the part of Nance and/or Mease, what they were really trying to recover on was a breach of an implied warranty, as when a person holds himself out as specially qualified to perform work of a particular character, there is an implied warranty that the work he undertakes will be accomplished in a skillful and proper workmanship manner. The Biggerstaffs had the burden of proving that Nance and/or Mease failed to perform the work in question in a workmanlike manner. The mere showing that the wall fell down did not, of and by itself, furnish proof that it was not constructed in a workmanlike manner.
>
> Mrs. Biggerstaff did not, and was not entitled to, venture an opinion as to what caused the wall to fall, since, absent any indication she

12

> possessed special skill or knowledge with respect to the matter involved that was so superior to that of the average person as to make her opinion a fact of probative value, she was not so qualified.

*Id.* (cleaned up).

While *Biggerstaff* is instructive, it is distinguishable. In *Biggerstaff*, the issue was whether the contractors *caused* a defect. Here, the issue is whether Defendants *repaired* a defect in accordance with the terms of the Agreement. While Defendants may be correct that Plaintiff's witnesses are not qualified to opine on the cause of the leaks—an issue that could arise depending on whether Section E of the Agreement applies to Plaintiff's claims—Plaintiff's witnesses can, without any special skill or knowledge, testify regarding other relevant matters. For example, Plaintiff could plausibly establish without an expert that: (1) leaks occurred, (2) Plaintiff reported the leaks to the Defendants, (3) Defendants worked on the leaks, (4) the leaks continued anyway, (5) Plaintiff informed Defendants of the continued leaks, (6) Defendants ignored Plaintiff, and (7) Plaintiff had to hire another company to repair the leaks.

The Court must draw all justifiable inferences in Plaintiff's favor. *See Celotex Corp.*, 477 U.S. at 331. While Defendants ultimately may be correct that Plaintiff cannot establish its claim without an expert, the Court cannot reach this conclusion as matter of law without knowing the nature of Plaintiff's evidence. The Court will not grant summary judgment on this basis.

### IV. Anticipatory Breach and Condition Precedent

Defendants argue that Plaintiff's own actions prevented them from performing under the Agreement. (ECF No. 44, p. 10). Defendants assert that they were excused from performing because Plaintiff hired a third party to replace the roofs and did not terminate the Agreement in writing. *Id.* at 10-11. But that argument succeeds only if Defendants did not breach the contract first, which the Court cannot conclude at this point. *See Superior Outdoor Advert. Co. v. Snadon*,

13

965 S.W.2d 421, 424-25 (Mo. Ct. App. 1998) (explaining that the defendant could not rely on anticipatory breach where defendant had previously breached the contract); *see also Witherspoon v. Choctaw Culvert & Mach. Co.*, 56 F.2d 984, 988 (8th Cir. 1932) ("If there is anything well settled it is that the party who commits the first breach of the contract cannot maintain an action against the other for a subsequent failure to perform") (citation and internal quotation marks omitted).

Defendants also argue that Plaintiff failed to fulfill a condition precedent when it texted Defendants to report the leaks instead of calling the number provided in the Agreement. *Id*. at 11. Plaintiff's exhibits show, however, that Defendants accepted reports via text. (ECF No. 56-4). For purposes of summary judgment, the Court will assume, without deciding, that Defendants waived this condition precedent by their own conduct. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 851 (8th Cir. 2014) ("A party may waive any condition of a contract in the party's favor and that waiver may be implied from conduct") (citation omitted). Thus, the Court cannot conclude that Plaintiff repudiated the agreement through anticipatory breach or failed to fulfill a condition precedent, and will not grant summary judgment on these grounds.

## CONCLUSION

For the reasons above, the Court will grant Defendants' Motion for Summary Judgment in part.

Accordingly,

**IT IS HEREBY ORDERED** that Tremco Incorporated and Weatherproofing Technologies Inc.'s Motion for Summary Judgment (ECF No. 43) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** to the extent that Defendants cannot be held liable for consequential damages under the terms of the Agreement. If Plaintiff can establish that

Defendants breached the Agreement—and that the breach resulted in direct damages—Defendants' liability will be limited to, **at most**, the cost of the Agreement itself. The Motion is **DENIED** in all other respects.

      **IT IS FURTHER ORDERED** that this case is set for a jury trial on **June 13, 2022**. This is a two-week docket. The parties shall review Part II of the Court's Case Management Order (ECF No. 21) dated May 26, 2020, relating to pre-trial requirements and deadlines.

      */s/ Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 22nd day of March, 2022.